IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| ALEXIS KELM, ) | |
| ) | Case No. 4:22-cv-01003 |
| Plaintiff, ) | |
| ) | |
| v. ) | JURY TRIAL DEMANDED |
| ) | |
| FCA US LLC ) | |
| Service: CT Corporation System ) | |
|         120 South Central Avenue ) | |
|         Clayton, MO 63105 ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

NOW COMES Plaintiff Alexis Kelm, by and through his undersigned attorneys, and for his Complaint against Defendant FCA US LLC, states and alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. At all times relevant, Plaintiff Alexis Kelm was a citizen and resident of the State of Missouri.

2. Defendant FCA US LLC (f/k/a Chrysler Group LLC hereinafter referred to as "Chrysler" or "FCA") is a limited liability company organized and existing under the laws of the State of Delaware, having a principal place of business in the State of Michigan and registered to do business in the State of Missouri. The sole member and direct owner of Defendant FCA US LLC is FCA North America Holdings LLC ("FCA NA"), a limited liability company organized under the laws of the State of Delaware. The sole member and direct owner of FCA NA and the sole beneficial owner of Defendant FCA US LLC is Stellantis N.V., a corporation organized under the laws of the Netherlands, with its corporate headquarters and principal place of business in London, England. Therefore, Defendant FCA US LLC is domiciled in the Netherlands and

1

England. Defendant FCA US LLC's registered agent may be served with process at the above-captioned address.

3. Defendant FCA is registered to do business in the State of Missouri, maintains a registered agent in the State of Missouri, and may be served with process through its registered agent at the above-listed Missouri address.

4. Defendant FCA is engaged in the design, manufacture, distribution, and sale of the Subject 2011 Dodge Durango, (VIN 1D4REGG7BC673414) ("Subject Vehicle") involved in the accident giving rise to the Plaintiff's Complaint.

5. At all times relevant to this Complaint, Defendant FCA served a market for Dodge Durango vehicles in the State of Missouri, and that product caused injury in the State of Missouri to a Missouri resident. As such, in accordance with the Supreme Court's ruling in *Ford Motor Co. v. Montana Eighth Judicial District Court et al.*, this Court has personal jurisdiction over Defendant FCA.

6. Defendant FCA is subject to the jurisdiction of this Court, in that it is a limited liability company conducting substantial business within the State of Missouri by maintaining continuous and systematic contacts with the State of Missouri, *including, but not limited to*,

   a. Defendant FCA is a global auto company that markets, sells, and services its products across the United States, including the sale of new and used Chrysler, Jeep, Dodge and Ram vehicles in the State of Missouri;

   b. Defendant FCA encourages a resale market for its products, including the purchase and sale of used Chrysler, Jeep, Dodge and Ram vehicles in the State of Missouri;

   c. Defendant FCA maintains a significant number of Chrysler, Jeep, Dodge and Ram dealerships throughout the State of Missouri, through which Defendant FCA urges

      the citizens of the State of Missouri to purchase its vehicles, including the Dodge vehicles;

d. Defendant FCA enhances its brand and increases its sales through the use of wide-ranging promotional activities, including television, print, online and direct-mail advertisements in the State of Missouri;

e. Defendant FCA ensures that customers keep their Chrysler, Jeep, Dodge and Ram vehicles long past the date of sale through the use of original parts and repair facilities across the country, including in the State of Missouri; and/or

f. Defendant FCA transports new and used Chrysler, Jeep, Dodge and Ram vehicles on Missouri highways and railways for distribution throughout the State of Missouri and the United States.

7. Defendant FCA's business contacts with the State of Missouri are so continuous and systematic as to render it essentially at home in Missouri, and as such, this Court may exercise jurisdiction over Defendant FCA. Defendant FCA has purposely availed itself of the privilege of conducting business in the State of Missouri and has thereby consented to the jurisdiction of this Court. Defendant FCA's conduct and connection with the State of Missouri are such that it could reasonably anticipate being hauled into a court in the State of Missouri.

8. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events giving rise to this claim occurred within this judicial district, in that the motor vehicle crash giving rise to this lawsuit occurred in Monroe County, Missouri, a county within this Division. Moreover, under 28 U.S.C. § 1391(b)(3), venue in this Court is proper because Defendant FCA is subject to the Court's personal jurisdiction.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

9. On August 31, 2021, Plaintiff was a passenger in the Subject Vehicle northbound on Missouri Highway 151 in Monroe County, Missouri, when the Subject Vehicle left the roadway and rolled over ("Subject Collision").

10. At all times relevant to this Complaint, Plaintiff was properly restrained and in normal seated position in the Subject Vehicle.

11. At all times relevant to this Complaint, the Subject Vehicle was operated a manner reasonably anticipated and intended by the Defendant FCA.

12. During the Subject Collision, the restraint system, *including, but not limited to*, the seat belts and airbags failed to properly function and restrain Plaintiff. As a result, she was ejected from the Subject Vehicle.

13. As a result of the Subject Collision and the defective and unreasonably dangerous conditions of the Subject Vehicle, Plaintiff suffered severe and permanent injuries, *including, but not limited to*, fractures and dislocated vertebrae resulting in paralysis.

14. As a result of the Subject Collision and the defective and unreasonably dangerous conditions of the Subject Vehicle, Plaintiff sustained damages exceeding $75,000, which including past and future medical expenses, pain and suffering, mental anguish, disfigurement, and diminished earning capacity.

## COUNT I – DEFENDANT FCA – STRICT LIABILITY

15. Plaintiff hereby incorporates by reference the allegations set forth in the foregoing paragraphs as if more fully set forth herein.

16. At all times relevant hereto, Defendant FCA was actively engaged in the business of designing, manufacturing, marketing, warranting, distributing and selling Dodge Durango vehicles.

17. Prior to the Subject Collision, Defendant FCA designed, manufactured, assembled, inspected, tested, distributed, placed into the stream of commerce and sold the Subject Vehicle in the normal course of its business for use by the general public.

18. At the time the Subject Vehicle left the control of Defendant FCA, it was defective and unreasonably dangerous when put to reasonably anticipated use.

19. The Subject Vehicle was defective and unreasonably dangerous due to its lack of reasonable and necessary occupant protection, *including, but not limited to*, the following:

   a. The Subject Vehicle was not crashworthy;

   b. The Subject Vehicle lacked reasonable and necessary reinforcements in its roof structures to maintain the occupant survival space during a foreseeable rollover event;

   c. The Subject Vehicle lacked sufficient energy absorption in its roof structures to prevent downward deformation into the occupant survival space during a foreseeable rollover event;

   d. The roof system (A-Pillar, B- Pillar, C-Pillar, headers, junctions and roof rail) on the Subject Vehicle was constructed with inadequate strength, which caused structural failures and section collapses during the Subject Collision;

   e. The restraint system failed to properly restrain and protect Plaintiff from ejection in a foreseeable rollover event;

   f. The pretensioners in the seatbelts of the Subject Vehicle failed to properly deploy and/or function during a foreseeable rollover event;

   g. The design of the restraint system, with the D-ring mounted to an inadequately reinforced B-Pillar, allowed for a significant amount of slack in the restraint system and an unacceptable amount of movement by Plaintiff during the Subject Collision;

   h. The airbag system failed to deploy during the Subject Collision;

   i. The airbag system failed to restrain Plaintiff and prevent ejection from the Subject Vehicle;

   j. The Subject Vehicle's deployment algorithm improperly suppressed the airbags during the Subject Collision, which allowed Plaintiff to be ejected from the Subject Vehicle;

5

    k. The restraint system, roof system, and airbags lacked adequate design to assure proper performance in a foreseeable rollover event;

    l. The Subject Vehicle lacked laminated glass in the side windows, which allowed Plaintiff to be ejected during the Subject Collision;

    m. The restraint system, roof system, and airbags lacked adequate testing and/or inspection before it was distributed and sold to ensure they were reasonably suitable for their intended purpose and provide adequate occupant protection in foreseeable crash conditions;

    n. The restraint system, roof system, and airbags lacked adequate warnings and/or other proper notice to alert users regarding the hazardous condition, as herein described, involving their use and operation;

    o. Prior to the Subject Collision, Defendant FCA failed to recall the Subject Vehicle for the purpose of making alternative design features available for the protection of drivers and passengers;

    p. Defendant FCA knowingly sold and continued to sell the Dodge Durango vehicles to the public when the testing it performed established that the Dodge Durango was defectively designed and unreasonably dangerous; and,

    q. In other respects, unknown to plaintiff at this time but which may become known prior to trial.

20. The Subject Vehicle was further in a defective and unreasonably dangerous condition in that it failed to give Plaintiff fair and adequate notice of the danger and possible consequences of using the Subject Vehicle in the intended and appropriate manner.

21. The Subject Vehicle was expected to reach, and did reach, the hands of the Plaintiff without substantial change or modification.

22. The Subject Vehicle was used in a manner that could be reasonably anticipated.

23. Defendant FCA knew or should have known that the Subject Vehicle would be used without inspection for defect and represented that the Subject Vehicle could be safely used for the ordinary purposes for which it was purchased.

24. The Subject Vehicle was in a defective and unreasonably dangerous condition at the time that it was sold to Plaintiff, in that the Subject Vehicle was dangerous to an extent beyond that which is contemplated by an ordinary and reasonable buyer or consumer, including Plaintiff.

25. Defendant FCA knew or should have known that the Subject Vehicle was defectively designed or manufactured in the particulars set forth above.

26. Defendant FCA knew or should have known that technologically and commercially feasible safer alternative designs and methods of design, manufacture, and warning existed and would have eliminated the unreasonably dangerous characteristics and condition of the Subject Vehicle.

27. Despite this knowledge, Defendant FCA failed to design and manufacture the Subject Vehicle so as to eliminate said defects and unreasonably dangerous characteristics and propensities.

28. Additionally, despite this knowledge, Defendant FCA failed to adequately warn consumers, including Plaintiff, of the unreasonably dangerous condition of the Subject Vehicle prior to the Subject Collision.

29. As a direct and proximate result of the defective and unreasonably dangerous condition of the Subject Vehicle, Plaintiff sustained severe injuries.

30. As a direct and proximate result of the defective and unreasonably dangerous condition of the Subject Vehicle, Plaintiff suffered the following damages:

    a. The reasonable expense of necessary medical care, treatment and services received including transportation, board and lodging expenses necessarily incurred in securing such care, treatment or services, and the present value of such expense reasonably certain to be required in the future;

b. Pain, suffering, and mental anguish experienced in the past and reasonably certain to be experienced in the future;

c. The value of earnings, profits, salary, or working time lost and the present value of earnings, profits, salary, or working time reasonably certain to be lost in the future;

d. The present value of loss of ability to earn in the future;

e. Scars, disfigurement, and visible results of Plaintiff's injuries; and,

f. The reasonable expense of necessary help in Plaintiff's home, which has been required as a result of his injuries, and the present value of such expense reasonably certain to be required in the future.

31. Defendant FCA knew or ought to have known, in light of the surrounding circumstances, that its conduct would naturally and probably result in injury or damage and it continued to conduct with malice or reckless disregard of the consequences from which malice might be inferred.

32. The above conduct of Defendant FCA, *including, but not limited to*, intentionally and recklessly placing defective and unreasonably dangerous Dodge Durango vehicles into the stream of commerce; intentionally designing a room system for the Subject Vehicle that provided inadequate protection during a foreseeable rollover event; intentionally designing a restraint system and airbag system that would not properly deploy during a rollover event; failing and/or refusing to adequately test the Subject Vehicle in a rollover event; refusing to implement necessary engineering design standards to provide protection during a foreseeable rollover events; and, failing and/or refusing to warn customers and the general public of the dangerous defects in the Subject Vehicle showed complete indifference to or conscious disregard for the safety of others,

8

including Plaintiff, justifying the imposition of punitive damages in an amount sufficient to punish Defendant FCA and deter Defendant FCA and others from like conduct.

WHEREFORE, Plaintiff requests this Court enter judgment against Defendant FCA for a reasonable sum of damages as will fairly and justly compensate Plaintiff, for punitive damages in such sum as will serve to punish Defendant FCA and deter Defendant FCA and others from engaging in like conduct, for his costs incurred herein, and for such other and further relief as the Court deems just and proper under the circumstances.

### COUNT II – DEFENDANT FCA – NEGLIGENCE

33. Plaintiff hereby incorporates by reference the allegations set forth above in the foregoing paragraphs as though more fully set forth herein.

34. At all times relevant hereto, Defendant FCA was actively engaged in the business of designing, manufacturing, marketing, warranting, distributing and selling Dodge Durango vehicles, including the Subject Vehicle.

35. Prior to the Subject Collision, Defendant FCA designed, manufactured, assembled, inspected, tested, distributed, placed into the stream of commerce and sold the Subject Vehicle in the normal course of business, for use by the general public as ultimate consumers.

36. As a motor vehicle designer, manufacturer, distributor and seller, Defendant FCA knew that users of their vehicles could be involved in motor vehicle collisions, and the extent of their injuries would frequently be determined by the design and construction of their vehicles, including the Subject Vehicle in this case.

37. Defendant FCA had a duty to the general public, including Plaintiff, to exercise reasonable care to design, manufacture, assemble, inspect, test, market, distribute, place into the stream of commerce and sell reasonably safe vehicles so as not to subject

9

consumers to an unreasonable risk of harm.

38. At all times relevant hereto, Defendant FCA owed to the general public, including Plaintiff, the duty to design, manufacture and sell vehicles that were not defective and/or unreasonably dangerous during a foreseeable collision.

39. Defendant FCA breached its duty to exercise reasonable care in the design, testing, manufacture, and sale of the Subject Vehicle in multiple respects, *including, but not limited to,* the following:

   a. The Subject Vehicle was not crashworthy;

   b. The Subject Vehicle lacked reasonable and necessary reinforcements in its roof structures to maintain the occupant survival space during a foreseeable rollover event;

   c. The Subject Vehicle lacked sufficient energy absorption in its roof structures to prevent downward deformation into the occupant survival space during a foreseeable rollover event;

   d. The roof system (A-Pillar, B- Pillar, C-Pillar, headers, junctions and roof rail) on the Subject Vehicle was constructed with inadequate strength, which caused structural failures and section collapses during the Subject Collision;

   e. The restraint system failed to properly restrain and protect Plaintiff from ejection in a foreseeable rollover event;

   f. The pretensioners in the seatbelts of the Subject Vehicle failed to properly deploy and/or function during a foreseeable rollover event;

   g. The design of the restraint system, with the D-ring mounted to an inadequately reinforced B-Pillar, allowed for a significant amount of slack in the restraint system and an unacceptable amount of movement by Plaintiff during the Subject Collision;

   h. The airbag system failed to deploy during the Subject Collision;

   i. The airbag system failed to restrain Plaintiff and prevent ejection from the Subject Vehicle;

   j. The Subject Vehicle's deployment algorithm improperly suppressed the airbags during the Subject Collision, which allowed Plaintiff to be ejected from the Subject Vehicle;

  k. The restraint system, roof system, and airbags lacked adequate design to assure proper performance in a foreseeable rollover event;

  l. The Subject Vehicle lacked laminated glass in the side windows, which allowed Plaintiff to be ejected during the Subject Collision;

  m. The restraint system, roof system, and airbags lacked adequate testing and/or inspection before it was distributed and sold to ensure they were reasonably suitable for their intended purpose and provide adequate occupant protection in foreseeable crash conditions;

  n. The restraint system, roof system, and airbags lacked adequate warnings and/or other proper notice to alert users regarding the hazardous condition, as herein described, involving their use and operation;

  o. Prior to the Subject Collision, Defendant FCA failed to recall the Subject Vehicle for the purpose of making alternative design features available for the protection of drivers and passengers;

  p. Defendant FCA knowingly sold and continued to sell the Dodge Durango vehicles to the public when the testing it performed established that the Dodge Durango was defectively designed and unreasonably dangerous; and,

  q. In other respects, unknown to plaintiff at this time but which may become known prior to trial.

41. As a direct and proximate result of Defendant FCA's negligent acts and/or omissions, Plaintiff sustained severe and permanent injuries.

42. As a direct and proximate result of Defendant FCA's negligent acts and/or omissions, Plaintiff suffered the following damages:

  a. The reasonable expense of necessary medical care, treatment and services received including transportation, board, and lodging expenses necessarily incurred in securing such care, treatment or services, and the present value of such expense reasonably certain to be required in the future;

  b. Pain, suffering, and mental anguish experienced in the past and reasonably certain to be experienced in the future;

    c.   The value of earnings, profits, salary, or working time lost and the present value of earnings, profits, salary, or working time reasonably certain to be lost in the future;

    d.   The present value of loss of ability to earn in the future;

    e.   Scars, disfigurement, and visible results of Plaintiff's injuries; and,

    f.   The reasonable expense of necessary help in Plaintiff's home, which has been required as a result of his injuries, and the present value of such expense reasonably certain to be required in the future.

43.    Defendant FCA knew or ought to have known, in light of the surrounding circumstances, that its conduct would naturally and probably result in injury or damage and it continued to conduct with malice or reckless disregard of the consequences from which malice might be inferred.

44.    The above conduct of Defendant FCA, *including, but not limited to*, intentionally and recklessly placing defective and unreasonably dangerous Dodge Durango vehicles into the stream of commerce; intentionally designing a room system for the Subject Vehicle that provided inadequate protection during a foreseeable rollover event; intentionally designing a restraint system and airbag system that would not properly deploy during a rollover event; failing and/or refusing to adequately test the Subject Vehicle in a rollover event; refusing to implement necessary engineering design standards to provide protection during a foreseeable rollover events; and, failing and/or refusing to warn customers and the general public of the dangerous defects in the Subject Vehicle showed complete indifference to or conscious disregard for the safety of others, including Plaintiff, justifying the imposition of punitive damages in an amount sufficient to punish Defendant FCA and deter Defendant FCA and others from like conduct.

WHEREFORE, Plaintiff requests this Court enter judgment against Defendant FCA for a reasonable sum of damages as will fairly and justly compensate Plaintiff, for punitive damages in such sum as will serve to punish Defendant FCA and deter Defendant FCA and others from engaging in like conduct, for his costs incurred herein, and for such other and further relief as the Court deems just and proper under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all allegations, claims and causes of action asserted herein.

Respectfully submitted,

/s/ J. Kent Emison
J. Kent Emison, MO# 29721
Michael J. Serra, MO # #63237
Mark A. Emison, MO #63479
Langdon & Emison LLC
911 Main Street
P.O. Box 220
Lexington, MO 64067
Phone: (660) 259-6175
Fax: (660) 259- 4175
kent@lelaw.com
mserra@lelaw.com
mark@lelaw.com